```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON
```

**MARSHA L. CLARK,**

      **Plaintiff,**

v.                                          CASE NO. 2:08-cv-00099

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the court on Plaintiff's Motion for Summary Judgment.[1] Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Marsha L. Clark (hereinafter referred to as "Claimant"), filed an application for SSI on April 22, 2005, alleging disability as of April 20, 1996, due to heart problems, high cholesterol, chronic bronchitis, back problems and memory loss. (Tr. at 51-55, 61-62.) The claim was denied initially and upon reconsideration. (Tr. at 31-33, 37-39.) On January 24, 2006,

---

[1] The court reminds the parties that pursuant to Local Rule of Civil Procedure 9.4(a), Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision." Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 42.) The hearing was held on February 22, 2007, before the Honorable Charlie P. Andrus. (Tr. at 265-92.) By decision dated April 4, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-23.) The ALJ's decision became the final decision of the Commissioner on December 12, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 5-7.) On February 12, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If

the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

  In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in

3

substantial gainful activity since the alleged onset date. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of coronary artery disease and degenerative joint disease. (Tr. at 18.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 19.) Claimant has no past relevant work. (Tr. at 21.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as mail sorter, desk clerk, dispatcher and information clerk, which exist in significant numbers in the national economy. (Tr. at 22.) On this basis, benefits were denied. (Tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was forty-seven years old at the time of the administrative hearing.  (Tr. at 51, 265.)  Claimant completed the tenth grade.  (Tr. at 270.)  Claimant has no past relevant work.  (Tr. at 270.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

The record includes treatment notes from Thacker Family Physicians dated October 2, 2001, through March 8, 2002.  (Tr. at 218-24, 230.)

On October 5, 2001, following a heart attack six years earlier and placement of a stent, Claimant reported to the emergency room with complaints of nausea and vomiting and atypical chest pain. Claimant had seen her physician a few days before her hospital

admission and had a normal EKG. (Tr. at 224A.) Claimant underwent a left heart catheterization, which showed only minimal arterial disease. (Tr. at 224A.)

On February 7, 2005, Claimant underwent cardiac catheterization following complaints of chest pain. Claimant had stent implantation. (Tr. at 119-20.) On April 11, 2005, Claimant had no complaints and denied chest pain, orthopnea, dyspnea or lower extremity edema. (Tr. at 183.)

On May 24, 2005, David E. Frederick, Ph.D. examined Claimant at the request of the State disability determination service. Claimant reported heart problems, a slipped disc in her back and memory problems. (Tr. at 134.) The examination was largely normal, except that Claimant's recent memory was severely deficient. (Tr. at 135.) On the WAIS-III, Claimant attained a verbal IQ score of 95, a performance IQ score of 75 and a full scale IQ score of 85. (Tr. at 136.) Claimant was "very persistent and focused on all tests." (Tr. at 136.) Regarding subjective symptoms, Claimant reported difficulty falling asleep and staying asleep due to back and arm pain. In addition, she reported worrying some, but denied depression. Claimant agreed that "except for her physical problems, she is doing well, and her life is OK." (Tr. at 137.) Dr. Frederick made no diagnoses and opined that Claimant's prognosis was "mentally good." (Tr. at 137.)

On June 27, 2005, a State agency medical source completed a

Psychiatric Review Technique form and opined that Claimant had no medically determinable mental impairments. A second State agency medical source affirmed this opinion on December 12, 2005. (Tr. at 195-207.)

On June 28, 2005, Stephen Nutter, M.D. examined Claimant at the request of the State disability determination service. Dr. Nutter diagnosed angina, chronic cervical, thoracic and lumbar strain and chronic bronchitis. Dr. Nutter noted that straight leg raising was negative and that there were no sensory abnormalities. (Tr. at 141.) X-rays of the lumbar spine showed marked narrowing at L5-21. (Tr. at 142.)

On July 8, 2005, Claimant reported to the emergency room with complaints of chest pain. She was diagnosed with chest and abdominal pain and gastroesophageal reflux disease. A chest x-ray was negative, and Claimant's EKG was normal. (Tr. at 146.)

On July 15, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant was limited to light work, with an occasional ability to climb, balance, stoop, kneel, crouch and crawl, and a need to avoid concentrated exposure to extreme cold and hazards. (Tr. at 148-55.)

The record includes treatment notes from Grant Medical Center dated December 2, 2004, through August 9, 2005. (Tr. at 157-72.)

On August 25, 2005, Claimant reported exertional chest

7

pressure and exertional dyspnea, relieved with rest. Claimant had no orthopnea or lower extremity edema. (Tr. at 175.) Claimant underwent left heart catheterization with stent placement. (Tr. at 173-74.) On October 31, 2005, Claimant reported her recent surgery relieved her exertional angina and that she felt well and had not had chest pain, orthopnea or shortness of breath. (Tr. at 177.)

On December 12, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work with an occasional ability to climb ladders, ropes and scaffolds and a need to avoid concentrated exposure to extreme cold and hazards. (Tr. at 187-94.)

On April 6, 2006, Claimant underwent catheterization after reporting chest pain with exertion such as walking less than fifty feet. It showed a widely patent right coronary artery stent and non-obstructive coronary atherosclerosis of the left coronary system, most significantly a 50% obtuse marginal branch stenosis. Medical therapy was recommended. (Tr. at 231, 242.)

The record includes treatment notes from University Cardiovascular Services dated July 3, 2006. Claimant continued to have chest pain since her catheterization in April of 2006. Mark A. Studeny, M.D. felt that Claimant's "chest pain is not likely to be of cardiac etiology given her widely patent right coronary system and non-obstructive atherosclerotic disease of her left coronary system. This does not explain her angina. Her shortness

of breath and chest pressure are likely related to chronic pulmonary disease." (Tr. at 242.)

The record includes treatment notes from Valley Health Systems dated September 29, 2005, through January 30, 2007. (Tr. at 245-64.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in ignoring the opinion of Dr. Frederick that Claimant's recent memory is severely deficient; and (2) the ALJ erred in his pain and credibility analysis. (Pl.'s Br. at 11-18; Pl.'s Reply at 1-7.)

The Commissioner argues that (1) the ALJ properly determined that the record fails to document that Claimant had memory problems; and (2) the ALJ's pain and credibility analysis is supported by substantial evidence. (Def.'s Br. at 7-13.)

Claimant first argues that the ALJ erred in ignoring the finding of Dr. Frederick that Claimant's recent memory is severely deficient. Claimant argues that Dr. Frederick's observation that Claimant's recent memory was severely deficient because she was not able to recall three of four words after twenty-five minutes is consistent with the testimony of Claimant's daughter and Claimant that Claimant cannot remember well enough to shop for groceries and that she enters a room and forgets why she is there. (Tr. at 278-79, 285.) Claimant takes issue with the ALJ's finding that there

is no objective evidence of memory loss in light of Dr. Frederick's findings. Finally, Claimant points out that the vocational expert testified that an individual with memory problems as described by the Claimant could not work. (Pl.'s Br. at 13-14; Pl.'s Reply 1-8; Tr. at 290-91.)

In his decision, the ALJ acknowledged Claimant's testimony at the administrative hearing that her concentration is "pretty good sometimes" but that if she goes into "one room to pick up something and I'll get in that room and then I'll forget what I went after. And then I just --- I get flusterated [sic] and I can't remember." (Tr. at 278-79, 21.) The ALJ further noted that Claimant's memory problems started after her heart attack in 1996. (Tr. at 21, 279.) In addition to Claimant's testimony about her memory problems the ALJ acknowledged the testimony of the vocational expert that with memory problems as described by the Claimant, Claimant would not be able to work. (Tr. at 22.) The ALJ explained that he rejected "this assessment as there is nothing in the record to show she has a memory problem. Furthermore, this was based on her testimony, and I found her credibility to be poor as discussed above." (Tr. at 22.)

The court finds that the ALJ did not err in failing to mention Dr. Frederick's finding that Claimant had severely deficient recent memory. The substantial evidence of record indicates that Claimant did not have a severe mental impairment related to her memory nor

10

was she otherwise limited by this symptom potentially related to her heart problem. Despite this isolated finding by Dr. Frederick in his report, Dr. Frederick ultimately made no Axis I or Axis II diagnoses, and he opined that Claimant's prognosis was "mentally good." (Tr. at 137.) Claimant's IQ scores were valid, and she was "very persistent and focused on all tests." (Tr. at 136.) Notably, Claimant received no ongoing mental health treatment. Moreover, two State agency sources who completed and then affirmed a Psychiatric Review Technique form on June 27, 2005, and December 12, 2005, both opined that Claimant had no medically determinable mental impairments. (Tr. at 195-207.) Claimant's other medical records, which primarily relate to her physical condition, do not indicate complaints related to memory. In short, even considering Dr. Frederick's finding, the substantial evidence of record does not indicate a significant memory problem. Furthermore, as discussed further below, the ALJ adequately considered Claimant's subjective complaints, including poor memory.

Next, Claimant argues that the ALJ erred in assessing Claimant's pain and credibility. In particular, Claimant argues that the ALJ failed to follow Social Security Ruling ("SSR") 96-7p because the ALJ "did not articulate in his decision the specific reasons for finding that Mrs. Clark's complaints of her symptoms were 'rather exaggerated.'" (Pl.'s Br. at 16.) Claimant further asserts that the ALJ did not fully consider Claimant's severe back

pain, breathing problems and poor memory in assessing Claimant's credibility. (Pl.'s Br. at 16-17.)

The ALJ's pain and credibility findings are consistent with the applicable regulations, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. § 416.929(b) (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ determined that Claimant satisfied the first prong of the pain analysis because she had medically determinable impairments that could reasonably be expected to produced her alleged symptoms. (Tr. at 21.) At the second step of the pain analysis, the ALJ thoroughly considered Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 20-21.) Contrary to Claimant's assertion, the ALJ did fully consider Claimant's complaints related to her back pain, breathing problems and poor memory. (Tr. at 20-21.)

The ALJ ultimately determined that Claimant's credibility was poor. He explained that Claimant's recent heart catheterization was asymptomatic and there were only minimal findings on consultative examination. The ALJ rejected the testimony of Claimant's daughter because she was relating Claimant's subjective complaints and actions. The ALJ noted there was no evidence of end organ damage and that Claimant has been stable on medication. The

ALJ further explained that regarding Claimant's back pain, Claimant's objective findings are mild and she has never undergone physical therapy or used a TENS unit or brace. (Tr. at 21.)

The ALJ's pain analysis was not conclusory, as Claimant suggests. The ALJ provided a sufficient explanation for his determination that Claimant's testimony about her subjective symptoms was not entirely credible and his findings are supported by substantial evidence.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is DENIED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 12, 2009

                                                            _Mary E. Stanley_
                                                            Mary E. Stanley
                                                            United States Magistrate Judge